MAKAR, J., concurring. It’s hard to blame the trial judge for refusing to grant another continuance of trial in this eminent domain case, which appears to have dawdled along aimlessly for years. The only issue' since the lawsuit’s inception in 2010 has been the amount of damages. The parties stipulated immediately that a portion of rural property belonging to Mr. J, Marvin Johnson and Mrs. Silvia W. Johnson'(operated primarily as a sand farm) was condemned for utility easements used for decades by Florida Gas Transmission Company, LLC (“Florida Gas”). Long ago, Florida Gas deposited $120,000 into the court’s registry, but the Johnsons anticipated far more in damages, thus necessitating a jury trial and a battle of expert witnesses to assess the value of the encroachment. Now, seven years later, the damages issue remains unresolved. Foot-dragging, the late-in-the-game substitution of new lawyers necessitating a continuance,[1] and other indicia of litigation languor led the current trial judge—at least the fourth to be assigned to this case—to attempt to move it to fínal resolution. After all, eminent domain jury trials get preference over other civil cases, section 73.071(1), Florida Statutes, and the remaining plaintiff-property owner, Mrs. Johnson, who is in her late seventies and recently lost her husband, might be denied justice if no damage award issues within her lifetime. But on the eve of the scheduled trial, Mrs. Johnson had severe heart problems, resulting in hér request for another continuance. Florida Gas joined in, claiming they hadn’t yet • deposed Mrs. Johnson, who they claimed was a critical witness. Why she had not been deposed earlier (or her husband, when he was alive) is unclear; notably, neither the company nor Mrs. Johnson had listed her as a potential trial witness. After an emergency hearing, the trial judge denied the jointly-sought continuance and issued an order stating in full: THIS CAUSE came before the Court on February 17, 2017 for hearing on the emergency motion for continuance, based oh urgent health issues [heart attack and recommendation for surgery] of the property owner, Ms. Johnson, presently 77 years old! [There had been prior motions for continuance, previously ruled on, not based on health issues]-, This is an eminent domain case involving the petitioner’s taking of the Johnson property for the public purpose of placing a third gas transmission pipeline on the Johnson property. [The first taking for a pipeline occurred in 1967, the second in 1994]. This taking occurred in June 2010; the amended order of taking was entered at that time., Florida law gives priority for eminent domain cases over all other civil cases. The only issue to be tried is the amount of compensatory damages that represent a full and fair value of the property taken [permanent and temporary easements and, if appropriate, several [sic] damages and damages for minerals taken], with the valuation date being determined as of the date of the order of taking [June 2010]. It is not known why the parties resisted going to trial sooner; there was construction time needed for the pipeline installation, and Mr. Johnson passed away in 2014. In 2015 Judge Hankinson set the case for trial; that date was changed to February 2017, in 2016. When the undersigned was rotated into the civil division July 1, 2016, the undersigned tried without success to have the trial moved earlier, ■ with the parties insisting the trial should not be-moved earlier. Reportedly, Ms. Johnson’s condition requires that she avoid stress; she is scheduled for surgery in the near future. However, her testimony appears not to have been anticipated for trial, as she is not listed by name on the witness lists, and there is no summary of any anticipated testimony she was expected to give. [That information was required to be included in the parties’ pretrial wit-mess disclosure]. Further, as the only issues for the jury are those relating to the value of the property taken, it is -the expert testimony .regarding those matters that is essential for the jury’s determination. For more than six years, nearly seven years, the petitioner has been-using the property it took from Ms. Johnson in June 2610. The amount -paid into the registry of the court is a mere pittance compared- to the amount estimated by petitioner’s counsel. Under the circumstances existing here, with no evidence as to when, or if, Ms. Johnson will ever be able to be healthy enough to participate in the trial, where her -testimony was not viewed as essential [as indicated by her not being identified as a witness], the Court .finds there is not sufficient .good cause further continue .this already very stale case. ' (Brackets, other than [sic], in original). Based on these findings, the trial judge concluded- that “further postponement of the trial would not be-consistent with Florida law, nor would it assist in reducing the stress[2] of this litigation on Mrs. Johnson, and for the reasons' set forth above and on the record at the February 17, 2017 hearing, the emergency motion for continuance is denied.” All this said, the record shows that Mrs. Johnson was stricken with a life-threatening heart condition that necessitated her absence at the trial.' She thereby established the basis for the continuance as explained in the Court’s opinion, which I join as to Mrs. Johnson’s request for relief. See Silverman v. Millner, 514 So.2d 77 (Fla. 3d DCA 1987) (explaining that sudden and unforeseeable stroke of employer on the day before trial necessitated continuance); see generally Philip J. Padovano, Continuance, 5 Fla. Prac., Civil Practice § 15:9 (2016-2017 ed.) (“[Tjhere are situations in which a motion for continuance must be granted in order to avoid an injustice. For example, the trial court may be required to continue a trial if a party, a material witness or an attorney is unable to attend as a result of an illness or physical condition.”). Less convincing is Florida Gas’s claim for relief, which is based on the inability to depose Mrs. Johnson at this juncture. The company claims it has been trying to depose her for “quite a while,” but the record presented doesn’t reflect diligence until just a few months before trial; plus, as the trial judge noted, if Mrs. Johnson was such a critical witness, why hadn’t the company listed her as the pretrial order required? So the claim that Florida Gas’s defense at trial would be eviscerated with Mrs. Johnson’s deposition testimony is somewhat overstated. Again, the trial is only about the calculation of economic damages, which will be decided via conflicting appraisals and dueling experts. The company is correct that Mrs. Johnson’s testimony about past operations of the sand farm might be of value, particularly since her husband died a few years ago, but the importance of that information at this late stage of the proceedings—after appraisals and experts have been tendered—seems minimal. The central injustice that justified a continuance was Mrs. Johnson’s severe illness, not the effect of her illness on the company’s eleventh-hour discovery efforts. , ' In 2016, Mrs. Johnson came to believe that her attorneys were in "cahoots with the gas company” and sought leave of court to get new ones. . According to the trial judge, beyond the stress of involvement in utility litigation dating back to the late 1960s, part of Mrs. Johnson’s recent, stress came from prior "episodes" of alleged misconduct by pipeline workers who “left broken beer bottles scattered around her property” and "urinated in front of her.” Added to that was Mrs, -Johnson’s belief "that terrorists may be trying to figure out how to blow up one or more of the pipelines on her property.” And-in one interrogatory Mrs. Johnson said that "[her] husband was beaten and left for dead on the site. No arrests have ever been made, but it seems likely that the perpetrators were business competitors.”